340 F.3d 79
 EGGHEAD.COM, INC., Plaintiff-Appellant,
v.
BROOKHAVEN CAPITAL MANAGEMENT CO., Ltd., Focused Capital Partners, L.P., Watershed Partners, L.P., Cadence Fund, L.P., Brookhaven Capital Management, LLC, Piton Partners, L.P., Skye Investment Advisors, Inc., Skye Investments, Inc., Vincent Carrino, Daniel Coleman, Paul McEntire, and Robert Lishman, Defendant-Appellees.
 Docket No. 02-7550.
 United States Court of Appeals, Second Circuit.
 Argued: February 10, 2003.
 Decided: August 8, 2003.
 
 PAUL D. WEXLER, Bragar, Wexler, Eagel & Morgenstern (Glenn F. Ostrager, Ostrager Chong & Flaherty LLP, on the brief) New York, N.Y., for Appellant.
 JOSEPH ZELMANOVITZ (Sheldon Eisenberger on the brief), New York, N.Y., for Appellees.
 Before: LEVAL and F.I. PARKER, Circuit Judges, and KAPLAN, District Judge.*
 LEVAL, Circuit Judge.
 
 
 1
 Plaintiff appeals from the judgment of the United States District Court for the Southern District of New York (Marrero, J.) dismissing the complaint. The suit was brought by a stockholder of Egghead.com, Inc. ("Egghead"), as a derivative action for the benefit of the corporation, against a group of investors alleged to constitute collectively a beneficial owner of more than 10% of the shares of Egghead. The suit, brought under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), alleged that the defendant group, being the beneficial owner of more than 10% of Egghead's shares and thus falling under the strictures of § 16(b), engaged in short swing trades (sales and purchases separated by less than six months) in Egghead stock, earning profits which it must disgorge to the corporation. The district court ruled that the defendant group was not liable because it did not beneficially own 10% of Egghead's shares. This was because shares relied on by the plaintiff to attribute the necessary 10% beneficial ownership to the defendants were held by entities which, in the circumstances, are deemed not to be beneficial owners by Rule 16a-1(a)(1)(v) of the Rules of the Securities and Exchange Commission, 17 C.F.R. § 240.16a-1(a)(1)(v).
 
 
 2
 The rule provides, in part, that registered investment advisers "shall not be deemed the beneficial owner of securities... held ... in customer ... accounts in the ordinary course of business ... as long as such shares are acquired ... without the purpose or effect of changing or influencing control of the issuer."[1] 17 C.F.R. § 240.16a-1(a)(1). It is not contested that in order to reach the 10% threshold for liability, it was necessary to count shares as beneficially owned by investment advisers when those shares were held by the investment advisers in the ordinary course of business for customer accounts and were otherwise not includible in the 10% group holding. A jury determined that the investment advisers' shares were acquired without purpose or effect of influencing control of Egghead. The court therefore found that, with respect to the short swing transactions in question, Egghead had no right of recovery. Plaintiff brings this appeal, contending that the district court employed the wrong test. We affirm, essentially for the reasons explained by Judge Marrero in his careful and thoughtful opinion. See Rosen ex rel. Egghead.Com, Inc. v. Brookhaven Capital Mgmt. Co., LTD., 113 F.Supp.2d 615 (S.D.N.Y.2000).
 
 BACKGROUND
 
 3
 For purposes of this appeal, the facts are largely uncontested. Egghead, on whose behalf the suit was brought, is a corporation whose stock is publicly traded. The defendants fall essentially into three categories: Two of the defendants, Brookhaven Capital Management Co., Ltd., a New York corporation, and Brookhaven Capital Management, LLC., a California corporation, are registered investment advisers, which hold and trade securities (including shares of Egghead) for customer accounts. (They are referred to in this opinion as the "Investment Advisers" or the "Brookhaven entities.") Focused Capital Partners, Cadence Fund, Piton Partners, and Watershed Partners are customers of the Investment Advisers. (We refer to this group, collectively, as the "Customer defendants.") The other defendants, Vincent Carrino and Daniel Coleman (the "Affiliate defendants"), are affiliates of the Investment Advisers and the Customers.
 
 
 4
 Counting all shares owned by the defendants, they collectively owned more than 10% of Egghead's common stock during the period in question; they engaged in trades which, we assume for purposes of the appeal, would result in several million dollars of short swing profits recoverable by Egghead if the defendants were deemed as a group to constitute a beneficial owner of more than 10% of Egghead's shares. However, it is conceded by plaintiff for purposes of the appeal that unless the grouping of shares included shares held in the ordinary course of business by the Investment Advisers for customers, which shares would not be included in the group but for their being held by the Investment Advisers, there can be no liability, because the group's ownership would not reach 10%.
 
 Procedural History
 
 5
 The suit was brought on behalf of Egghead in September of 1999, asserting claims pursuant to § 16(b), seeking disgorgement of approximately seven million dollars in profits earned by the defendants from short-swing trades in Egghead stock made during 1997 and 1998. The sole basis of liability under § 16(b) that is asserted in this case depends on the defendants as a "group" being deemed the beneficial owner of more than 10% of Egghead stock. The complaint acknowledges that no individual defendant's holdings exceeded 10% of Egghead's stock. It alleges, however, that the defendants acted as a "group," as defined by § 13(d)(3) of the Exchange Act and Rule 13d-5(b)(1) thereunder, and that the Egghead holdings of all the defendants, when aggregated, exceeded 10% of the company's stock. Thus, according to the theory of the complaint, beneficial ownership exceeding 10% was attributable to each individual member of the group, and § 16(b) liability attached.
 
 
 6
 The defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Their motion argued that SEC Rule 16a-1(a)(1), which defines "beneficial ownership" for the purpose of determining liability under § 16(b), provides that registered investment advisers are not considered to be "beneficial owners" of securities they hold in customer accounts in the ordinary course of business, provided that those securities were acquired without the purpose or effect of influencing control of the issuer of the shares. See 17 C.F.R. § 240.16a-1(a)(1)(i)-(xi). It is stipulated that the two Brookhaven defendants are registered investment advisers. The Investment Advisers held Egghead shares in the ordinary course of business in customer accounts. Without the Investment Advisers' customer shares attributed by plaintiff to the group by virtue of the fact that they were held by the Investment Advisers, the aggregate Egghead holdings of the group members never exceeded 10% of Egghead's outstanding stock during the relevant period. The defendants contended that the relevant Egghead securities held by the Investment Advisers were acquired without purpose or effect of changing or influencing control of Egghead, and that they were therefore entitled to judgment.
 
 
 7
 In a September 2000 ruling, the district court agreed with the defendants' principal argument. It ruled that where an investment adviser held shares of a corporation for customers, in the ordinary course of business, having acquired the shares without intent or effect of influencing control over the management of the corporation, those shares would not be deemed to be beneficially owned by the investment adviser in determining whether 10% beneficial ownership was established. Because the district court could not determine from the papers whether the Egghead securities held by the Investment Advisers were acquired with intent to influence control over Egghead, it directed trial of that question.
 
 
 8
 A trial was held in April of 2002 on the limited issue. At the conclusion of the trial, the jury returned a special verdict for the defendants by answering "yes" to the question:
 
 
 9
 Have defendants proved by a preponderance of the evidence that [the Investment Advisers] in the ordinary course of business acquired Egghead shares without the purpose or effect of changing or influencing control of Egghead?
 
 
 10
 Based on the jury's finding that the customer securities held by the investment advisers were acquired without intent to influence control, coupled with the plaintiff's stipulation that counting shares held by the Investment Advisers as beneficially owned by them was necessary to reaching the 10% threshold, the court dismissed the case. Egghead filed a notice of appeal.
 
 DISCUSSION
 
 11
 The issue we consider on appeal is whether, for the purpose of determining a group's 10% holder status under § 16(b) of the Securities Exchange Act, a registered investment adviser charged with being part of the group is deemed to be the beneficial owner of shares it holds in customer accounts in the ordinary course of business, when the shares were acquired without the purpose or effect of influencing control of the issuer of those securities. We conclude, in accordance with the literal terms of Rule 16a-1(a)(1)(v), that the investment adviser is not deemed to be the beneficial owner of such shares. Accordingly, if the group's ownership of 10% of the shares of an issuer depends on the counting of such shares as beneficially owned by the investment adviser, the group does not beneficially own 10% and is not covered by § 16(b).
 
 
 12
 Beneficial Ownership under § 16(b) and § 13(d)
 
 
 13
 Section 16(b) of the Securities Exchange Act provides that various classes of corporate insiders, including beneficial owners of more than 10% of any class of a corporation's securities, must disgorge any profits earned from short-swing transactions in that security to the issuer, "irrespective of any intention on the part of such beneficial owner" to engage in such transactions or to misuse inside information. 15 U.S.C. § 78p(b).
 
 
 14
 "Beneficial ownership" under SEC rules is defined differently for different purposes. Section 13(d) of the Exchange Act requires any entity (or group of entities) which is the beneficial owner of more than five percent of particular types of individual equity securities to disclose that fact to the S.E.C. Under § 13, the definition of beneficial owner is quite broad:
 
 
 15
 (a) For the purposes of sections 13(d) and 13(g) of the Act a beneficial owner of a security includes any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares:
 
 
 16
 (1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or
 
 
 17
 (2) Investment power which includes the power to dispose, or to direct the disposition of, such security.
 
 
 18
 17 C.F.R. § 240.13d-3(a).
 
 
 19
 This broad definition of beneficial ownership is consistent with § 13's purpose, which is to "alert the marketplace to every large, rapid aggregation or accumulation of securities, regardless of technique employed, which might represent a potential shift in corporate control." Morales v. Quintel Entertainment, Inc., 249 F.3d 115, 122-23 (2d Cir.2001) (quoting GAF Corp. v. Milstein, 453 F.2d 709, 717 (2d Cir. 1971)). No serious adverse consequences flow to the holder or owner of such securities as the result of the broadly inclusive definition of beneficial ownership.
 
 
 20
 Section 16(b), in contrast, has far more drastic consequences. As noted, it makes the beneficial owner of more than 10% of any class of equity security strictly liable to surrender to the corporation any profits realized from short swing trades in shares of the corporation. The rules for determining beneficial ownership under § 16 are less inclusive than those governing determination of beneficial ownership for purposes of § 13.
 
 
 21
 The rule, which is set forth in full at footnote 1, begins by adopting the definition of beneficial owner that governs under § 13(d), but then adds a proviso to the effect that eleven classes of holders of securities "shall not be deemed the beneficial owner of securities ... held for the benefit of third parties or in customer or fiduciary accounts in the ordinary course of business ... as long as such shares are acquired by such institutions or persons without the purpose or effect of changing or influencing control of the issuer ...." 17 C.F.R. § 240.16a-1(a)(1). The exemption list includes stock brokers, banks, investment companies, and under clause (v), registered investment advisers, such as the Brookhaven entities.
 
 
 22
 Institutions of the sort listed in the exemption clauses conventionally hold large quantities of shares for the benefit of others. As the district court recognized, "In adopting the Rule setting forth these exemptions, the SEC acknowledged that without such exemptions the listed institutions, which in the ordinary course of their business manage customer and fiduciary accounts, would be subject to liability under Section 16(b) if they exercised either their voting or investment power over accounts that when aggregated held over ten percent of a class of equity securities. Responding to this concern, the SEC stated that `[t]he proposed revision appears necessary to avoid undue interference with the day-to-day business of banks, brokers, dealers, investment advisers and other specified institutional fiduciaries and custodians.'" A-121 (quoting Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Release No. 34-27148, 54 Federal. Reg. 35667, at 35670 (Aug. 18, 1989)). The district court observed that implicit in these exemptions is "an equitable consideration: that it would be unfair to place Section 16(b)'s strict liability for disgorgement of short-term profits on [such] investors who may possess no inside knowledge or purpose to engage in the management or to influence control of the issuer." A-123.
 
 
 23
 It is not contested that the Brookhaven defendants are registered investment advisers, which hold Egghead shares for customers in the ordinary course of their business. According to the jury's determination, the shares in question were acquired in the ordinary course of business and without a control purpose. Following the terms of clause (v) of Rule 16a-1(a)(1), we conclude that the Investment Advisers are deemed not to be the beneficial owners of those shares for purposes of § 16(b), and because the defendant group's liability depends on counting those shares as beneficially owned by the Investment Advisers so as to bring the group's ownership above 10%, the defendants are not liable.
 
 
 24
 Plaintiff's argument based on Rule 16a-1(a)(1)(x)
 
 
 25
 Plaintiff advances an argument against the application of clause (v) of the SEC rule, based on another clause in Rule 16a-1(a)(1)'s exemption list. After listing nine classes of institutions whose shares are deemed not to be beneficially owned by the institution when the facts conform to the rule's requirements, the rule then adds a tenth exemption specifically directed to "groups." Clause (x) adds to the exempt list: "a group, provided that all the members [are] persons enumerated in [exemptions (i) through (ix) of the rule]." By reason of the rule of clause (x), plaintiff argues that where an entity covered by clauses (i) through (ix) is a member of a "group" that includes members not exempted by clauses (i) through (ix), the entity loses the benefit provided by clauses (i) through (ix). Plaintiff thus contends that because the Investment Adviser defendants are members of a group that includes the Customer defendants and the Affiliate defendants, which do not fall within clauses (i) through (ix), the Investment Adviser defendants cannot claim the protection of clause (v), and the shares they hold in customer accounts in the ordinary course of business must be counted to establish 10% beneficial ownership by the group.
 
 
 26
 There is some support for plaintiff's argument in recent decisions of the district court. In Strauss v. Kopp Inv. Advisors, Inc., 1999 WL 787818 (S.D.N.Y. Sept. 30, 1999), 1999 U.S. Dist. LEXIS 15591, at *8, the district court held that "[u]nder Rule 16a-1(a)(1)[(x)],[2] [unless] each member of an alleged group [is] a person or institution that qualifies for one of the enumerated exclusions ... the entire group loses the exemption." The same district court reaffirmed that ruling one year later in Morales v. Adept Technology, Inc., 2000 WL 1738586 (S.D.N.Y. Nov. 22, 2000), 2000 U.S. Dist. LEXIS 16964, at *2 ("This Court's previous reasoning in Strauss is dispositive of the issue presented by the... defendants regarding the definition of a group under Section 16(b) analysis."). In another case, a second district court followed the reasoning of Strauss v. Kopp. See Morales v. Auspex Systems, Inc., 2001 WL 258502 (S.D.N.Y. March 15, 2001), 2001 U.S. Dist. LEXIS 2617, at *5 ("[T]he exemption for investment advisors applies only if all the members of the group fall within the exemption.").
 
 
 27
 Judge Marrero disagreed, concluding that each exemption granted by Rule 16a-1(a)(1) stands on its own, and that exemption (v) does not cease to apply merely because exemption (x) is not available. We agree with Judge Marrero's reading of the rule.
 
 
 28
 As we read the rules, clause (x) is independent of clause (v). The purpose of clause (x) is to exempt an entire group under appropriate circumstances. The issue here is not whether a group should be exempted, but whether the Investment Advisers should be deemed the beneficial owners of shares they hold for customers in the ordinary course of business. The provisions of the rule relating to clause (v) specify that investment advisers are not deemed the beneficial owners of such shares. The terms of clause (v) make no reference to clause (x). The plaintiff is certainly correct that under clause (x), a group is not eligible for a § -16 exemption from beneficial ownership of securities so held unless all of its members are exempted under clauses (i) through (ix). Thus, a "mixed" group, whose members include exempt and non-exempt entities, does not qualify for clause (x)'s total exemption of the group. However, the beneficial holdings of any group — "mixed" or not — include only the securities beneficially owned by the members of the group. See 17 C.F.R. § 240.13d-5(b)(1) ("When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership ... of all equity securities of that issuer beneficially owned by any such persons.") (emphasis added). And, for purposes of computing beneficial ownership, under clause (v) an investment adviser is deemed not to be the beneficial owner of shares held for customers in the ordinary course of business (and acquired without intent to influence control). If the Investment Adviser defendants are deemed not to be beneficial owners of shares so held, then these shares are not attributed to the group by virtue of their being held by the Investment Advisers.
 
 
 29
 Plaintiff asserts there are policy reasons to support the contention that group activity by investment advisers should negate the effect of clause (v). In the face of the clear language of the rule, however, no argument based only on policy can prevail. Even if substantial policy reasons support plaintiff's interpretation, the text of the SEC's rule does not. To sustain the plaintiff's proposed interpretation of Rule 16a-1(a)(1), essentially nullifying exemptions (i) through (ix) where group activity is alleged unless every member of the alleged group comes within one of these exemptions, we would need to alter the text of the rule in the guise of interpretation. We see no reason to do so. If the SEC concludes that its rules do not provide adequate protection against insider trading, it can easily amend the rules to achieve the desired goals. We read Rule 16a-1 to mean what it says, and we leave it to the SEC to amend the rule in the event it concludes that the rule fails, in its present form, to provide appropriate protections. We reject the interpretation of Rule 16a-1 adopted in Strauss v. Kopp.
 
 
 30
 As the rule is written, clause (v) does not depend for applicability on the availability of clause (x). Under clause (v), the Investment Advisers are deemed not to be beneficial owners of the Egghead shares they hold for customers. The defendant group did not beneficially own 10% of Egghead's shares, and § 16(b) is therefore not applicable.
 
 CONCLUSION
 
 31
 The judgment of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Lewis Kaplan, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The full text of the rule is as follows:
 (1) Solely for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities registered pursuant to section 12 of the Act, the term "beneficial owner" shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder; provided, however, that the following institutions or persons shall not be deemed the beneficial owner of securities of such class held for the benefit of third parties or in customer or fiduciary accounts in the ordinary course of business (or in the case of an employee benefit plan specified in paragraph (a)(1)(vi) of this section, of securities of such class allocated to plan participants where participants have voting power) as long as such shares are acquired by such institutions or persons without the purpose or effect of changing or influencing control of the issuer or engaging in any arrangement subject to Rule 13d-3(b) (§ 240.13d-3(b)):
 (i) A broker or dealer registered under section 15 of the Act (15 U.S.C. 78o);
 (ii) A bank as defined in section 3(a)(6) of the Act (15 U.S.C. 78c);
 (iii) An insurance company as defined in section 3(a)(19) of the Act (15 U.S.C. 78c);
 (iv) An investment company registered under section 8 of the Investment Company Act of 1940 (15 U.S.C. 80a-8);
 (v) Any person registered as an investment adviser under Section 203 of the Investment Advisers Act of 1940 (15 U.S.C. 80b-3) or under the laws of any state;
 (vi) An employee benefit plan as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. 1001 et seq. ("ERISA") that is subject to the provisions of ERISA, or any such plan that is not subject to ERISA that is maintained primarily for the benefit of the employees of a state or local government or instrumentality, or an endowment fund;
 (vii) A parent holding company or control person, provided the aggregate amount held directly by the parent or control person, and directly and indirectly by their subsidiaries or affiliates that are not persons specified in paragraphs (a)(1)(i) through (ix), does not exceed one percent of the securities of the subject class;
 (viii) A savings association as defined in Section 3(b) of the Federal Deposit Insurance Act (12 U.S.C. 1813);
 (ix) A church plan that is excluded from the definition of an investment company under section 3(c)(14) of the Investment Company Act of 1940 (15 U.S.C. 80a-3); and
 (x) A group, provided that all the members are persons specified in § 240.16a-1(a)(1)(i) through (ix).
 (xi) A group, provided that all the members are persons specified in § 240.16a-1(a)(1)(i) through (vii).
 
 
 [17]
 C.F.R. § 240.16a-1(a)(1)
 
 
 [2]
 The opinion actually says "16a-1(a)(1)(ix)," but it is clear that the court meant to rely on subsection (x), not subsection (ix)